IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-60332
Summary Calendar
_____


CALVIN CLAYTON,

Plaintiff-Appellant,

versus

FRITO-LAY, INC.,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Mississippi, Jackson
(3:95-CV-75-LN)
_____


January 10, 1997
Before GARWOOD, JOLLY, and DENNIS, Circuit Judges.[*]

GARWOOD, Circuit Judge:

Calvin Clayton (Clayton) appeals the district court's grant of summary judgment to Frito Lay, Inc., in his Title VII discriminatory termination lawsuit. We affirm.

**Facts and Proceedings Below**

On June 18, 1994, Clayton, who is black, walked out of his job at the Frito-Lay plant in Jackson, Mississippi, shortly after 5:00 AM, roughly two hours prior to the end of his shift at 7:00 AM. Clayton left work without permission and failed to clean up his

_____

[*] Pursuant to Local Rule 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

work area or punch out on the time clock, violating Frito-Lay's Rules of Conduct. Frito Lay terminated Clayton's employment based upon this infraction of its formal, published rules. The rules authorized immediate discharge for such an infraction. Clayton was replaced by a black person.

Clayton subsequently filed this lawsuit, alleging that he was terminated based upon his race, a violation of Title VII of the Civil Rights act of 1964. 42 U.S.C. § 2000e *et seq*. After the November 30, 1995, close of discovery, Frito Lay moved for summary judgment based upon Clayton's failure to adduce any evidence of disparate treatment. Clayton responded on January 12, 1996; the response merely directed the district court's attention to the prior findings of another judge of the court regarding Frito Lay's history of discriminatory practices in *Lindsey v. Frito-Lay, Inc.*, No. 3:91-cv-629(W)(S) (S.D. Miss. Oct. 10, 1994).

On February 23, 1996, the district court entered a memorandum opinion and order granting Frito-Lay summary judgment. In this opinion the district court rejected the *Lindsey* findings as evidence adequate to make out Clayton's *prima facie* case, noting that Frito Lay "has demonstrated that the management and supervisory personnel at the plant are completely different from those who were employed at the time of the actions giving rise to the previous case" and, additionally, that Clayton, who had been hired in 1992, was not employed by Frito-Lay in March or April 1991 when the conduct underlying the *Lindsey* lawsuit occurred. The

2

court also noted that Clayton did not dispute that he had violated Frito Lay's published rules that authorized immediate discharge for such an infraction.

On March 8, 1996, Clayton filed a motion asking that the district court arrest or amend the judgment, grant a new trial, or reconsider the grant of summary judgment. Clayton attached to this motion the affidavit, made on February 8, 1996, of Irvin Bradley, an employee at Frito-Lay. Bradley averred that on December 19, 1995, he "was informed by Don Coleman," a black supervisor at the plant, that a white employee, James Stouffer, had committed roughly the same infraction as Clayton, and that Stouffer had been "returned to work December 22, 1995." Frito-Lay responded by challenging the timeliness of the affidavit's submission, noting that Bradley was referred to as a possible witness in interrogatories Clayton answered during discovery. Clayton's unsworn motion stated that the incident occurred "after the close of discovery" and asserted that the evidence was "newly discovered."[1]

On April 16, 1996, the district court denied Clayton's motion. The district court, observing that Clayton had never explained how or when he learned of the information contained in the Bradley

---

[1] Clayton on April 3, 1996, submitted, without any motion or pleading, a March 29 affidavit from Bradley relating an incident on March 22, 1996, in which Stouffer allegedly refused to obey the instructions of another black supervisor, a dischargeable offense. There is no statement as to whether anything resulted from this incident or, if so, what. For all the affidavit reflects, Stouffer could have been fired by the time it was filed.

affidavit, found that his failure to timely submit the affidavit was due to a failure of due diligence. Clayton timely appeals both the grant of summary judgment and the denial of his subsequent motion.

### Discussion

In reviewing a grant of summary judgment we review the record *de novo*. *Wittorf v. Shell Oil Co.*, 37 F.3d 1151, 1154 (5th Cir. 1994). We apply the same legal standards which governed the district court's determination(s). *Id.* "In work-rule violation cases, a Title VII plaintiff may establish a prima facie case by showing 'either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly.'" *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995), *quoting Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir.), *cert. denied*, 101 S.Ct. 227 (1980). Because Clayton does not contend that he did not violate Frito-Lay's published rules in a manner authorizing his discharge, we consider his arguments that his submissions were competent to demonstrate that "white employees were treated differently under circumstances 'nearly identical' to his." *Id.* (*citations omitted*).[2]

---

[2] Clayton's first point of error is that the district court erred in accepting the *Mayberry* court's formulation of what evidence is required to establish a *prima facie* case under Title VII for termination based upon a rule infraction. He submits that the district court instead should have "scrutinized the evidentiary offerings for indicia of racial prejudice at work." *Byrd v. Roadway Express*, 687 F.2d 85, 86 (5th Cir. 1982). As our ensuing treatment of the other issues raised on appeal reveals, however, we

4

Clayton contends that the district court erred in refusing to accept the findings made in the *Lindsey* case as evidence in the instant litigation. Clayton's argument, made expressly to the district court and implicitly in his appellate brief, is that Frito-Lay should be collaterally estopped from denying the findings of past discrimination made in *Lindsey*.

Federal law governs the preclusive effect of a prior federal judgment. *Stovall v. Price Waterhouse Co.*, 652 F.2d 537, 540 (5th Cir. 1981). The Supreme Court has held that principles of federal common law do not necessarily preclude such an "offensive" use of collateral estoppel when the plaintiff parties are not identical or in privity. *Parkland Hosiery Co. v. Shore*, 99 S.Ct. 645 (1979). This Circuit, however, "has recognized that district courts have broad discretion to determine the availability of offensive collateral estoppel." *Hauser v. Krupp Steel Producers, Inc.*, 761 F.2d 204, 207 (5th Cir. 1985), *citing Nations v. Sun Oil Co.*, 705 F.2d 742, 744 (5th Cir.), *cert. denied*, 104 S.Ct. 239 (1983). We have also stated that offensive collateral estoppel is "a doctrine of equitable discretion to be applied only when the alignment of the parties and the legal and factual issues raised warrant it." *Nations*, 705 F.2d at 744. For this reason, the district court should not allow the use of offensive collateral estoppel "when to

---

find that Clayton failed to present *any* competent evidence to make out his *prima facie* case. In any event, as the district court noted, there was no basis for finding Frito Lay's reasons for discharging Clayton pretextual.

do so would be unfair to the defendant."[3]  *Rufenacht v. Iowa Beef Processors, Inc.*, 656 F.2d 198, 202 (5th Cir. 1981), *cert. denied*, 102 S.Ct. 1279 (1982).  *See also Recoveredge v. Pentecost*, 44 F.3d 1284, 1291 n.12 (5th Cir. 1995).

The district court did not abuse its broad discretion in declining to hold Frito-Lay bound by the findings made in *Lindsey*. The conduct involved in *Lindsey* transpired during a time frame antecedent to 1992, when Clayton was hired, and the record reveals that Frito-Lay has changed its management staff at the plant where Clayton worked since the "historical" incidents recounted in *Lindsey* occurred.  We conclude that under the facts of this case it would be patently unfair to impute the past actions of former employees to Frito-Lay.

Furthermore, while Clayton does not cite any other specific legal grounds which justify consideration of the *Lindsey* findings

---

[3]  The Supreme Court in *Parklane* discussed particular circumstances which might result in unfairness to a defendant, including cases where the first suit involved "small or nominal damages" such that the defendant would have no reason to engage in a vigorous defense, cases where the judgment relied on is inconsistent with previous judgments against the defendant, and cases where the second suit offers the plaintiff(s) procedural advantages not present in the first suit.  As we have observed, however, "[t]he *Parklane* Court did not consider its list of considerations exhaustive." *Chemetron Corp. v. Business Funds, Inc.*, 682 F.2d 1149, 1189-1190 (5th Cir. 1982) (listing additional circumstances of unfairness culled from prior circuit jurisprudence), *vacated on other grounds*, 103 S.Ct. 1245 (1983). *Compare In the Matter of Lewisville Properties, Inc.*, 849 F.2d 946, 949 (5th Cir. 1988); *United Association of Journeymen v. NLRB*, 747 F.2d 326, 331-332 (5th Cir. 1984); *Nations*, 705 F.2d at 744; *Hicks v. Quaker Oats Company*, 656 F.2d 1158, 1168-1170 (5th Cir. 1981).

as competent summary judgment evidence,[4] our independent examination of the *Lindsey* opinion indicates that even were those findings admissible they would not suffice, given the elapsed time and intervening changes in Frito-Lay's personnel, to make out Clayton's *prima facie* case of discriminatory termination. *Hebert v. Monsanto Co.*, 682 F.2d 1111, 1120-1126 (5th Cir. 1982). In the absence of some showing that Frito-Lay's new management has perpetuated, adopted, or revived the discriminatory practices uncovered in *Lindsey* those findings demonstrate nothing more than "unfortunate events in history." *United Airlines, Inc. v. Evans*, 97 S.Ct. 1885, 1889 (1977).

The passage of years, the intervening change in plant management, and the fact that those involved in Clayton's termination were not involved in the *Lindsey* incidents preclude the latter from meeting the *Mayberry* "circumstances 'nearly identical'" test. *See, e.g., Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992) (". . . the individuals with whom plaintiff seeks to compare his/her treatment must have dealt with the same supervisor"); *Timms v. Frank*, 953 F.2d 281, 287 (7th Cir. 1992) ("Most importantly, Krackenberger's and [plaintiff] Timms's

---

[4] "In order to defeat a properly supported motion for summary judgment, the nonmoving party must direct the court's attention to *admissible evidence in the record* which demonstrates that it can satisfy a fair-minded jury that it is entitled to a verdict in its favor." *Conticommodity Services, Inc. v. Ragan*, 63 F.3d 438, 441 (5th Cir. 1995) (*emphasis added*) (*citations omitted*) (*internal quotation marks omitted*).

applications were considered by different people. Krackenberger was reinstated by Frank Santoro; Timms was denied by Burdette Person. . . . As to decisions by Person alone, there is no way to infer that the denial of Timms's request was discriminatory . . ."); *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991) ("Little must show that Republic gave preferential treatment to a younger employee under 'nearly identical' circumstances. . . . The circumstances of Little and Turner do not meet this test. Boyd did not counsel Little because he was not Little's supervisor; Boyd was, however, Turner's supervisor and thus had authority to provide job counseling"); *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989) (". . . disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis").

Clayton, persisting in his attempt to bootstrap the *Lindsey* findings into his *prima facie* case, contends that the district court erred by inferring that Frito-Lay's employment practices had changed because Frito-Lay produced no evidence of that fact. Clayton charges that this action violates the rule attendant to summary judgment proceedings that all reasonable inferences are to be resolved in favor of the nonmovant. *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). Our review of the record reveals, however, that Frito-Lay submitted to the district court the affidavit of James Michael McGuffie, Plant Manufacturing Manager. This affidavit details the changes in the

8

management hierarchy at the Jackson plant subsequent to the *Lindsey* litigation. Clayton has done nothing to rebut, controvert, or otherwise undermine the averments contained in the McGuffie affidavit. *See Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (nonmovant "may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial"). Accordingly this contention, like those preceding, is meritless.

Finally, Clayton challenges the district court's denial of his motion to arrest or amend the judgment, grant a new trial, or reconsider the judgment. We review the district court's decision for an abuse of discretion. *Rollins v. Fort Bend Independent School Dist.*, 89 F.3d 1205, 1222 (5th Cir. 1996). Clayton has not provided any explanation concerning why he was unable to present the Bradley affidavit to the district court in a timely manner,[5] and the record reveals no facts which might render Clayton's ignorance of that information excusable. *Washington v. Patlis*, 916

---

[5] Clayton asserts that he was unable to timely submit the affidavit because the incident related in the affidavit occurred after discovery had ended. As the district court noted, however, this still does not explain why Clayton was unable to uncover this information, which after all came from the only potential witness cited by Clayton during discovery, and present it to the district court prior to the summary judgment ruling. We are particularly intrigued by the fact that the affidavit was made on February 8, 1996, more than two weeks prior to the district court's judgment, but not submitted until the March 8, 1996, nearly two weeks after the district court's ruling. Our speculations aside, the circumstances surrounding the discovery of the information contained in the Bradley affidavit remain undisclosed on this record.

F.2d 1036, 1039 (5th Cir. 1990); *Jones v. Western Geophysical Company of America*, 669 F.2d 280, 285 (5th Cir. 1982). Additionally, the Bradley affidavit consists largely of inadmissible hearsay and therefore does not comprise competent summary judgment evidence. *Rock v. Huffco Gas & Oil Co., Inc.*, 922 F.2d 272 (5th Cir. 1991). The district court did not abuse its discretion.

For the preceding reasons, the judgment of the district court is

AFFIRMED.